# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4119 | **DATE** | 11/14/2000 |
| **CASE TITLE** | RJ Corman Railroad vs. International Union of Operating | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. The dismissal of the Second Amended Complaint in its present form is called for and Local 150's motion is granted. (6-1) Corman is given until November 24, 2000 to file a self-contained Third Amended Complaint, after which Local 150 will be given 21 days to respond.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | NOV 15 2000 | | |
| | Notified counsel by telephone. | | date docketed | | |
| | Docketing to mail notices. | | | | 15 |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING | | | |
| | | 00 NOV 14 PM 3:56 | 11/14/2000 | | |
| SN | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | SN mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

R.J. CORMAN RAILROAD COMPANY, LLC,  )
et al.,                              )
                                     )
            Plaintiffs,              )
                                     )
    v.                               )   No. 00 C 4119
                                     )
INTERNATIONAL UNION OF OPERATING     )
ENGINEERS, LOCAL 150, et al.,        )
                                     )
            Defendants.              )

DOCKETED

NOV 1 5 2000

MEMORANDUM OPINION AND ORDER

International Union of Operating Engineers, Local 150 ("Local 150") has filed a Fed. R. Civ. P. ("Rule") 12(b)(6) motion to dismiss this action that was originally brought by R.J. Corman Railroad Company ("Corman") against Local 150 and two of its officers (who were later dropped from the case by Corman) and that, since then, has most recently been modified by the Second Amended Complaint ("SAC") that names R.J. Railroad Company, LLC and R.J. Corman Railroad Company/Material Sales as plaintiffs. After Local 150's Rule 12(b)(6) motion had become fully briefed in the usual one-two-three briefing sequence ordered by this Court that was completed by Local 150's filing of its reply memorandum, plaintiffs (collectively referred to as "Corman Companies" for convenience) have filed what this Court believes to have been an unbidden (and hence unauthorized) "Plaintiffs'

Sur-Reply in Opposition to Defendant's Motion To Dismiss."[1] For the reasons explained here, Local 150's motion is granted.

To begin with, Corman Companies have impermissibly sought to derail Local 150's motion by splintering the original Corman operations in an effort to create an illegal secondary boycott situation rather than the primary dispute situation urged by Local 150.[2] There is no dispute that original plaintiff Corman and Local 150 were parties to successor collective bargaining agreements ("CBAs"), the latest of which expired on December 19, 1999 (FAC ¶11) and that collective bargaining for a new agreement began in November 1999 and continued until Corman withdrew from bargaining on June 6, 2000 (FAC ¶12). That breakdown resulted in NLRB proceedings (still unresolved) being undertaken by both

---

[1] Corman's SAC, accompanied by a memorandum of law in support, had been filed in this Court's absence pursuant to permission granted by its colleague Honorable James Moran. On this Court's return it entered an order calling for Local 150 to file its reply memorandum in support of its previously-filed motion to dismiss the First Amended Complaint ("FAC"), and Local 150's counsel did so in timely fashion. This Court's minute clerk's check of the case docket reflects no order by this Court granting leave to Corman Companies to make their "Sur-Reply" filing, and this Court has no recollection of having granted permission to do so orally. If such oral permission was in fact given, of course no criticism of Corman Companies' counsel is in order--but if that was not the case, counsel had no business trying to get in the last lick without asking whether this Court would allow it, and the Sur-Reply will be stricken from the file.

[2] Instead of repeating the nature of that effort, this opinion simply attaches pages 2 and 3 of Corman Companies' Memorandum in Opposition, which describes under the rubric "The Parties" the corporate splintering that is claimed to have accomplished that result.

2

sides of the dispute and in the picketing activities by Local 150 that triggered Corman's original filing of this action.

Under the circumstances Corman cannot properly play the alchemist role, attempting to transmute base metal into gold, by its separation of what had been a unitary employer into different segments, thus hoping to create so-called neutral employers with whom Local 150 has no quarrel. That asserted change was admittedly instituted only <u>after</u> this lawsuit was filed (Corman Companies Mem. in Opp. 2). Hence Corman's action should and will be viewed by this Court as one brought (and sought to be maintained) in its original embodiment, without reference to that attempted bootstrapping.

Although this Court is of course well aware of the need to sustain a complaint against Rule 12(b)(6) attack "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations" (<u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984)), the just-indicated elimination of Corman's artificial construct from the SAC[3] has

---

[3] Thus FAC ¶¶11 and 12 had set out wholly forthright allegations (admitted by Local 150) about Corman's and Local 150's prior CBAs and about their ensuing unsuccessful collective bargaining for a new CBA. Those have been sought to be supplanted by SAC ¶¶11 and 12, which have now limited the identical allegations to "Derailment Services," identified in SAC ¶3 as "the corporate successor to R.J. Corman Railroad Company LLC's Derailment Division." Similarly, the SAC's second designated plaintiff R.J. Corman Railroad Company, LLC is the product of the post-litigation reshuffling of Corman, with which Local 150 has had all of its prior bargaining and contract history.

drawn the fangs from Corman's allegations of impermissible secondary picketing that is really permissible primary picketing. Those opportunistic allegations are not properly included in the category of "well-pleaded" allegations that must be credited for Rule 12(b)(6) purposes.

Corman Companies also fail in their effort to recharacterize Local 150's communications to Corman customers--which Local 150 has drawn carefully to stay well on the permissible side of the line separating information from coercion. If Corman has indeed lost business as a result, as it alleges (and as this Court therefore credits), that is simply the price to any employer of a lawful employer-union economic dispute, just as losses that are sustained by employees and a union during a strike represent the price paid on the other side of such a dispute. And that legitimately-sustained price imposed on Corman includes for example the honoring, by any employees of Corman's customers, of picket lines set up by Local 150 at what for a half-century has been recognized as a lawful situs for "ambulatory" picketing (see Sailor's Union (Moore Dry Dock), 92 NLRB 547, 548-49 (1950)).

That leaves for discussion only such allegations as those in SAC ¶37:

> Since on or about March 22, 2000 and continuing to date, Defendants, individually and by and through their officers, agents, and representatives, have induced or encouraged employees of Derailment Services' customers and the customers' contractors to refuse to perform services for their employers, and have threatened,

>coerced and restrained Derailment Services' customers with an object of forcing those customers to cease doing business with Derailment Services, as well as for other unlawful objectives.

Inducement and encouragement are legally protected, while threats and coercion are not. But given Corman's and Corman Companies' litigation history of demonstrated distortion of the situation to this date, the SAC's conclusory assertions in the latter respect also cannot be taken at face value (although this Court of course recognizes that conclusions are generally an acceptable aspect of notice pleading). More specifics will be required to test the viability of Corman's claim or claims.

Thus dismissal of the SAC in its present form is called for, and Local 150's motion is granted. Because this does not mean that a _properly_ fashioned complaint (which would have to be advanced, of course, in the objective good faith demanded of every lawyer and litigant by Rule 11) might not keep Corman in court, Corman is given until November 24, 2000 to file a self-contained Third Amended Complaint, after which Local 150 will be given 21 days to respond.

  Milton I. Shadur
  Senior United States District Judge

Date: November 14, 2000