Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 4119 | **DATE** | ½/2001 |
| **CASE TITLE** |  | RJ Corman Railroad vs. International Union of Operating | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly th of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Local 150's motion to dism denied except to the extent stated in the preceding paragraph. (17-1) It is ordered to answer the T Amended Complaint (except for paragraph 7) on or before January 16, 2001.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Documen Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 0 3 2001 date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | DOCKETING 01 JAN -2 PM 3: 51 | 1/2/2001 date mailed notice | |
| SN | courtroom deputy's initials | Date/time received in central Clerk's Office | SN mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

R.J. CORMAN RAILROAD COMPANY, LLC, )
et al., )
 )
        Plaintiffs, )
 )
v. ) No. 00 C 4119
 )
INTERNATIONAL UNION OF OPERATING )
ENGINEERS, LOCAL 150, et al., )
 )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

International Union of Operating Engineers, Local 150 ("Local 150") has moved to dismiss the Third Amended Complaint ("TAC") in this action, a version that has now been now filed by "R.J. Corman Railroad Company/Material Sales" ("Material Sales").[1] In turn Material Sales has filed its Memorandum in Opposition ("Memorandum"). Although the motion to dismiss must be and is denied in principal part because of the legal standard that applies to a Fed. R. Civ. P. ("Rule") 12(b)(6) motion, something more than a straight-out denial is called for under the

---

[1] Instead of the hackneyed metaphor of a moving target, this case has presented the phenomenon of a moving marksman. In the original Complaint R.J. Corman Railroad Company ("Corman") was named as the sole plaintiff. That was then followed in the First Amended Complaint by the naming of two plaintiffs (R.J. Corman Railroad Company, LLC and Material Sales), followed next (in the best Hydra tradition) by a Second Amended Complaint that named the same two entities plus R.J. Corman Derailment Services, LLC. Now Material Sales stands alone in the TAC. That sequence has understandably raised questions on his Court's part that have not yet been fully answered--hence this memorandum opinion and order.

circumstances.

This Court has never doubted for a moment the ability of competent plaintiff's counsel to fashion a complaint that, with its allegations taken as gospel together with all reasonable favorable inferences, would survive under the generous standards set by <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984) and its progeny. What has been less clear is whether that could be done in the objective good faith required of every pleader by Rule 11.

Now Material Sales has tendered a showing that its existence as a separate corporate entity did indeed predate the current dispute (Mem. Ex. 1 is a photocopy of its November 10, 1994 Articles of Incorporation in Kentucky). But at the same time, Material Sales acknowledges that until June 29, 2000 (only a week before Corman filed the original Complaint here) it shared the building in Gary, Indiana with what Material Sales now calls "Derailment Services" (Mem. 3), and that those two corporate affiliates (Material Sales' own term) carried on their operations out of that facility.

Although Material Sales does not say so in so many words, it is exceedingly plain that to the outside world (including Local 150 and, most recently, this Court) the present insistence on the entities' claimed separateness was absent. It will be remembered that this action was originally filed by Corman (not by Material Sales), which made the very same allegations charging Local 150

with assertedly illegal conduct against _it_ that Material Sales now advances as conduct against _it_.²

Labor law has not been fully tolerant of the asserted niceties of corporate organization where real-world appearances indicate otherwise. Thus the caselaw has imposed successor liability for collective bargaining purposes in situations where piercing the corporate veil or alter ego responsibility would not suffice, for example, to create liability in commercial breach of contract litigation. In that respect, what obviously remain to be seen in the present case are such things as (1) the history of the collective bargaining negotiations and the resulting collective bargaining agreements ("CBAs"), (2) who was within the bargaining unit from time to time (including for whom any ERISA-covered contributions were made), (3) the extent if any to which Corman (in any of its various guises) had represented (or even disclosed) to Local 150 that Material Sales was an entity separate and apart from the employer with which Local 150 negotiated and entered into CBAs--and the list could go on.

What this Court has made plain in its prior insistence that the obviously blurred lines of demarcation (if indeed any demarcation existed) had to be clarified is that it will not do for any prior or present plaintiff in this case to transmute the identity that it had previously displayed so as to punish Local

---

² See Appendix.

3

150 for what would otherwise be permissible activity under labor law. If Local 150 has indeed gone beyond the pale, this Court will have no hesitancy in holding it responsible to the extent that the law requires--but none of the Corman entities or their counsel should operate on the blithe assumption that this Court will be deluded by the tyranny of labels that may not reflect what has been and is really going on in the parties' dispute.

One other matter calls for discussion: Local 150's motion to dismiss for lack of subject matter jurisdiction the portion of Material Sales' claim that is based on its allegation that Local 150 agents "engaged in tailgating, swerving in front of the vehicles and other intimidating and unsafe driving activities" (TAC ¶7). Not a word in Material Sales' Memorandum has addressed that issue, leaving undisputed Local 150's contention that no private action will lie under the Labor Management Relations Act (29 U.S.C. §187(a) and (b)) for a violation of that statute's Section 8(b)(1)(A) (29 U.S.C. §158(b)(1)(A))--which is the nature of Material Sales' charge. In this instance the NLRB has issued a complaint against Material Sales based on asserted unfair labor practice charges lodged by Local 150--hence evidencing a presumptive primary dispute. Because Material Sales has really voiced no opposition to this portion of Local 150's motion, it is granted.

In any event, Local 150's motion to dismiss is denied except

to the extent stated in the preceding paragraph. It is ordered to answer the TAC (except for TAC ¶7) on or before January 16, 2001.

                                          /s/ Milton I. Shadur
                                          Milton I. Shadur
                                          Senior United States District Judge

Date:  January 2, 2001

## Appendix

As the text of this opinion has sought to reflect, the problems that have troubled and still trouble this Court are entirely of plaintiff's own making. It is particularly instructive to look at the Complaint as initially tendered to this Court--tendered, it will be recalled, a week <u>after</u> Material Sales now says that Derailment Services went its separate way after both it and Material Sales (under the current version of events) had done business in the same Gary, Indiana building in which Material Sales now says it alone continues to operate.

R.J. Corman Railroad Company ("Corman")--speaking of itself without any qualifying or limiting additions--filed that original Complaint. After referring to its principal place of business in Nicholasville, Kentucky,[1] it identified <u>its</u> facilities as being located in Gary and elsewhere (Complaint ¶3). Then Complaint ¶4 went on to describe <u>Corman's</u> business in these terms (emphasis added):

> Corman is engaged in several lines of business including the operation of shortline railroads, emergency services for railroads, specialized construction for railroads and industries operating their own railroad facilities, and <u>sale and distribution of railroad construction materials</u>. Corman has provided railroad emergency services through a group of employees in Gary, Indiana commonly referred to as the "Gary Derailment Division."

Now Mem. 3, in seeking to distinguish Material Sales from

---

[1] Mem. Ex. 1 also gives that as the location of Material Sales Corporation and of its original two directors, Richard J. and Robyn Corman.

Derailment Services, says this about their respective operations
(note, though, that originally Corman had treated <u>both</u> of the
following sets of activities as <u>its own</u>):

> Material Services buys railroad track materials like
> rails, ties, spikes, switches and similar hardware, and
> warehouses it at a dozen locations across the U.S.
> Material Sales then sells and delivers these materials
> to railroads. Derailment Services, on the other hand,
> maintains specialized equipment and crews of heavy
> equipment operators who respond to railroad
> emergencies, primarily derailments.

After Complaint ¶¶5-8 had identified Local 150 and two of
its officers (who were originally targeted as additional
defendants) and unidentified agents, Complaint ¶9 referred to
Corman as having previously entered into CBAs with Local 150,
followed by bargaining for possible renewal after the last one
had expired in December 1999 (Complaint ¶10). Then after Corman
notified Local 150 that bargaining was at an end (Complaint ¶14),
Local 150 people assertedly "followed <u>Corman</u>[2] trucks making
materials deliveries to numerous railroad yards in northern
Illinois and Indiana and observed and photographed the delivery
activities" (Complaint ¶16). Next Complaint ¶17 said that "Local
150 commenced picketing at the <u>Corman</u>[3] facility in Gary,
Indiana." Finally by way of the factual background, before
turning to the allegations of Complaint ¶¶25 and 26 as to harm

---

[2] <u>Not</u> Material Sales.

[3] <u>Not</u> Material Sales.

2

assertedly suffered by Corman,[4] Complaint ¶23 said:

> As a result of the Defendants' actions, Corman's volume of business at its Gary Derailment Division and at its Material Sales operation in Gary has declined dramatically and <u>Corman has been required to furlough</u> all the employees of the Derailment Division in Gary and <u>some of the Materials Management employees at that location as well</u>.

That last reference is the only one in the original Complaint that spoke of Material Sales at all, and it notably did so in terms of Corman's "Material Sales operation in Gary" and of Corman's having to furlough employees both of the Derailment Division and of the "Materials Management" (sic) operation. Little wonder, then, that this Court is of the view that more than a bald identification of Material Sales as a preexisting corporation is required to resolve the matters at issue here.

---

[4] <u>Not</u> Material Sales.

3